Stephen G. Larson (SBN 145225)
slarson@larsonllp.com
A. Alexander Lowder (SBN 269362)
alowder@larsonllp.com
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendants CITY OF CUDAHY, ALFONSO NOYOLA; ELIZABETH ALCANTAR; MARTIN FUENTES; CYNTHIA GONZALEZ; DAISY LOMELI; JOSHUA CALHOUN; RAUL DIAZ, and CECILIA MADRIGAL-GONZALEZ.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Cuper Development LLC, Go Cudahy LLC,  Davina LLC, Genius Distribution LLC, Herbal Dragon LLC and Daniel & Goliath LLC,<br><br>        Plaintiff,<br><br>        vs.<br><br>City of Cudahy, a municipal corporation; and Alfonso Noyola; Elizabeth Alcantar; Martin Fuentes; Cynthia Gonzalez; Daisy Lomeli; Joshua Calhoun; Raul Diaz, Cecilia Madrigal-Gonzalez; and Louis Morales,<br><br>        Defendant. | Case No. 2:24-CV-02833-DSF-SK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>[*Filed concurrently with Request for Judicial Notice; Declaration of A. Alexander Lowder; [Proposed] Order Granting Motion to Dismiss Plaintiffs' Complaint*]<br><br>Date:    July 8, 2024<br>Time:   1:30 p.m.<br>Crtrm.: 7D<br><br>Judge:  Dale S. Fischer |

/ / /

/ / /

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 8, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Dale S. Fischer in Courtroom 7D, at 350 West 1st Street, Los Angeles, California 90012, Defendant CITY OF CUDAHY ("The City") and Defendants Alfonso Noyola, Elizabeth Alcantar, Martin Fuentes, Cynthia Gonzalez; Daisy Lomeli, Joshua Calhoun, Raul Diaz, and Cecilia Madrigal-Gonzalez ("Individual Defendants")[1] (collectively, "Defendants") will and hereby move the Court to dismiss under Rule 12(b)(6) for failure to state claims upon which relief can be granted, in the Complaint filed by Plaintiffs Cuper Development LLC, Go Cudahy LLC,  Davina LLC, Genius Distribution LLC, Herbal Dragon LLC and Daniel & Goliath LLC ("Plaintiffs"). This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 30, 2024, with ongoing emails regarding the motion from April 29, 2024 to May 2, 2024.  (Lowder Decl., ¶ 2.)

Defendants' Motion to Dismiss is made on the following grounds:

First, Defendants move to dismiss Claims 2 and 3, for violation of 18 U.S.C. §§ 1964(c),(d) of the Civil Racketeering Influenced and Corrupt Organizations Act (RICO) on the ground that Plaintiffs lack statutory standing under RICO based on the federal illegality of cannabis, and the Complaint fails to adequately allege any activity that constitutes a RICO predicate offense

Second, Defendants move to dismiss Claim 4 alleging an equal protection violation under 42 U.S.C. § 1983 on the ground that the Complaint fails to allege the fundamental threshold requirement to allege an equal protection claim.  Specifically,

---

[1] Counsel for defendants represents only the City of Cudahy and its employees. Defendant Louis Morales was a contractor with the City and not a City employee. As noticed in the Notice of Errata clarifying the clerical error in the Stipulation to Extend Time to Respond to Initial Complaint (L.R. 8-3), Larson LLP has not and does not represent Defendant Louis Morales.

1  Plaintiffs fail to show that they are part of a protected class or that their fundamental
2  rights were violated.  Alternatively, Plaintiffs fail to show that there was disparate
3  treatment to others similarly situated for a class-of-one claim.

4      Third, Defendants move to dismiss Claim 5 alleging a due process violation
5  under 42 U.S.C. § 1983 on the ground that Plaintiffs fail to allege the requisite
6  threshold showing of a liberty or property interest protected by the U.S.
7  Constitution, to pursue a due process claim, because cannabis is not recognized as a
8  constitutionally protected liberty or property interest.

9      Fourth, Defendants move to dismiss Claim 1 alleging breach of contract on
10  the grounds that the non-operating fees were imposed in accordance with the
11  development agreements and there were no conditions waiving the fees based on the
12  plain language of the development agreements.

13      Fifth, Defendants move to dismiss Claim 6 alleging violation of Government
14  Code section 66020 (also known as the Mitigation Fee Act) because "fees collected
15  under development agreements" are expressly excluded from the category of fees
16  covered by section 66020, and therefore, inapplicable here.

17      Sixth, Defendants move to dismiss Claim 7 alleging that operating or non-
18  operating fees constitute illegal tax because Plaintiffs fail to allege facts entitling
19  Plaintiffs to a declaratory judgment that the operating and non-operating fees are an
20  illegal tax.

21      Seventh, Defendants move to dismiss Claim 8 alleging that non-operating
22  fees violate the law because City of Cudahy Municipal Code §15.40 expressly
23  excludes "fees collected development agreement" from the definition of fees, and
24  therefore, inapplicable here.

25      Lastly, Defendants move to dismiss Claim 9 challenging the administrative
26  proceedings because Plaintiffs have not exhausted their administrative remedies,
27  which require Plaintiffs to challenge and appeal an administrative proceeding in
28  accordance with City of Cudahy Municipal Code section 5.020.080(7).

1    Because these deficiencies cannot be cured, Defendants respectfully request
2  the Court dismiss, with prejudice, all claims in Plaintiffs' Complaint.
3    This Motion is based upon this Notice of Motion and Motion, the attached
4  Memorandum of Points and Authorities, Defendants' Request for Judicial Notice,
5  the Declaration of A. Alexander Lowder, all pleadings and papers on file, and such
6  oral argument and other evidence as the Court shall consider prior to or at the time
7  of the hearing on the Motion.
8
9  Dated:  June 6, 2024                    LARSON LLP
10
11
12                                     By:  _____/s/ A. Alexander Lowder_____
13                                          Stephen G. Larson
                                           A. Alexander Lowder
14                                     Attorneys for Defendants CITY OF CUDAHY,
                                       ALFONSO NOYOLA; ELIZABETH
15                                     ALCANTAR; MARTIN FUENTES;
                                       CYNTHIA GONZALEZ; DAISY LOMELI;
16                                     JOSHUA CALHOUN; RAUL DIAZ, and
                                       CECILIA MADRIGAL-GONZALEZ.
17
18
19
20
21
22
23
24
25
26
27
28

1
2

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 2

III.  LEGAL STANDARD ............................................................................... 6

IV.   ARGUMENT ............................................................................................ 6

    A.    Counts 2 and 3 are Fatally Defective and Cannot be Cured ................... 6

        1.    Plaintiffs Lack Statutory Standing Under RICO ......................... 6

        2.    The Complaint Fails to Allege the Fundamental Basis for a RICO Claim – Predicate Racketeering Activity .......................... 7

        3.    The Complaint Fails to State a Claim for RICO Conspiracy ................................................................................. 11

    B.    Count 4 Fails to Allege a Violation of Equal Protection under 42 U.S.C. § 1983 ........................................................................................ 12

    C.    Count 5 Fails to Allege the Threshold Requirement for a Due Process Claim ...................................................................................... 13

    D.    Count 1 Fails to Allege Facts Showing the City's Breach ................... 14

        1.    The DAs Expressly Provided for Non-Operating Fees ............. 14

        2.    Plaintiffs Had No Right to a Waiver of Non-Operating Fees ........................................................................................... 15

            a.    The Force Majeure Clause Does Not Apply ................... 15

            b.    The City Was Not in Default and Thus Did Not Breach ............................................................................. 18

            c.    The City Was Not Required to Hold Annual Hearings ......................................................................... 18

            d.    Recitals of a Contract Do Not Form Rights and Obligations ...................................................................... 19

    E.    Counts 6 and 8 Fail to State a Claim ..................................................... 19

    F.    Count 7 Fails as the Operating Fees are not an Illegal Tax ................. 20

    G.    Plaintiffs Cannot Prevail on Count 9 Due to Their Failure to Exhaust Administrative Remedies ....................................................... 21

V.    CONCLUSION ...................................................................................... 21

LARSON
LOS ANGELES

i

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

5
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 6

6

7
*Bell v. Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................ 6

8

9
*Cent. State Univ. v. Am. Ass'n of Univ. Professors*,
    526 U.S. 124 (1999) .......................................................................... 12

10

11
*Gonzales v. Raich*,
    545 U.S. 1 (2005) ................................................................... 1, 7, 13

12

13
*Grandpa Bud, LLC v. Chelan Cnty. Washington*,
    No. 2:19-CV-51-RMP, 2020 WL 2736984 (E.D. Wash. May 26,
    2020) .................................................................................................. 13

14

15
*Howard v. Am. Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) ............................................................ 11

16

17
*Kendall v. Visa U.S.A., Inc.*,
    518 F. 3d 1042 (9th Cir. 2008) ........................................... 6, 7, 11, 19

18

19
*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ............................................................ 6

20

21
*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) .............................................................. 2

22

23
*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir.1989) ............................................................... 6

24
*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014) ............................................................ 2

25

26

27
*Oscar v. Univ. Students Coop. Ass'n*,
    965 F.2d 783 (9th Cir. 1992), *abrogated on other grounds by Diaz
    v. Gates*, 420 F.3 897 (9th Cir. 2005) ................................................. 8

28

*Portman v. County of Santa Clara*,
   995 F.2d 898 (9th Cir.1993) ................................................................. 13

*Raich v. Gonzales*,
   500 F.3d 850 (9th Cir. 2007) ............................................................... 13

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ............................................................................ 8

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
   411 U.S. 1 (1973) .............................................................................. 12

*Scheidler v. Nat'l Org. for Women, Inc.*,
   537 U.S. 393 (2003) ......................................................................... 8, 9

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) .............................................................. 8

*Shulman v. Kaplan*,
   58 F.4th 404 (9th Cir. 2023) ............................................................ 7, 13

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................... 6

*United States v. Panaro*,
   266 F.3d 939 (9th Cir. 2001) ............................................................... 8

*Vill. of Willowbrook v. Olech*,
   528 U.S. 562 (2000) .......................................................................... 12

*Walter v. Drayson*,
   *538 F.3d 1244* (9th Cir. 2008) ............................................................. 8

*Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*,
   24 F.3d 56 (9th Cir. 1994) ................................................................. 13

*Williamson v. Lee Optical*,
   348 U.S. 483 (1995) .......................................................................... 12

*Yale Auto Parts, Inc. v. Johnson*,
   758 F.2d 54 (2d Cir. 1985) ................................................................. 14

1

**California Cases**

2

*City of Fillmore v. Bd. of Equalization*,

3

    194 Cal. App. 4th 716, 125 Cal. Rptr. 3d 186 (2011) .......................................21

4

*KB Salt Lake III, LLC v. Fitness Int'l, LLC*,

5

    95 Cal. App. 5th 1032 (2023) .........................................................................17

6

*O'Sullivan v. Griffith*,

7

    153 Cal. 502 (1908) ..........................................................................................19

8

*Richman v. Hartley*,

    224 Cal. App. 4th 1182 (2014) ......................................................................14

9

*Sass v. Hank*,

10

    108 Cal. App. 2d 207 (1951) ..........................................................................14

11

*SVAP III Poway Crossings, LLC v. Fitness Int'l, LLC*,

12

    87 Cal. App. 5th 882 (2023) ...........................................................................17

13

*Walker v. City of San Clemente*,

14

    239 Cal. App. 4th 1350 (2015) ......................................................................19

15

**Federal Statutes**

16

18 U.S.C.

17

    §§ 1341, 1343, and 1951 ....................................................................................8

    § 1951 ...................................................................................................................8

18

    § 1951(b)(2) .....................................................................................................8, 9

19

    § 1961(1)(B) ........................................................................................................8

20

    § 1962(c) ........................................................................................................8, 11

    § 1962(d) ............................................................................................................11

21

    § 1964 ...................................................................................................................7

    § 1964(c) ..............................................................................................................7

22

23

21 U.S.C.

    § 881(a)(1) .........................................................................................................13

24

25

42 U.S.C.

    § 1983 ...........................................................................................................12, 14

26

27

Federal Controlled Substances Act, 21 U.S.C.

    § 801 et seq. ....................................................................................................7, 13

28

Racketeer Influenced and Corrupt Organization Act ...................................*passim*

**California Statutes**

Cal. Civ. Code
  § 1638 ............................................................................... 14
  § 1641 ............................................................................... 14

Cal. Gov't Code
  §§ 66000-66025 .............................................................. 19

Cal. Govt. Code
  §§ 65864 et seq. ............................................................. 20

California Government Code
  § 66020 ....................................................................2, 19, 20

City Municipal Code
  § 15.40.020, subsec. 13 ................................................ 20

Mitigation Fee Act (Gov't Code
  § 66000 et seq.)........................................................... 19, 20

Municipal Code
  § 5.020.080(7)................................................................ 21

**Other Authorities**

Fourteenth Amendment .................................................... 12, 13

Executive Order N-33-20 .................................................... 3

Fed. R. Civ. P. Rule 9(b) .............................................. 6, 9, 11

Fed. R. Civ. P. Rule 12(b)(6)......................................... 6, 21

LARSON
LOS ANGELES

# I.   INTRODUCTION

In this action, six prospective cannabis operators, Plaintiffs Cuper Development LLC, Go Cudahy LLC, Davina LLC, Genius Distribution LLC, Herbal Dragon LLC, and Daniel & Goliath LLC, (collectively, "Plaintiffs"), refused to fulfill their contractual obligations to Defendant City of Cudahy (the "City").  In 2018, after cannabis was legalized under California state law, the City approved and entered into Development Agreements with each of the six plaintiffs to allow them to stand-up cannabis businesses in the City.  However, after rejecting numerous efforts by the City to resolve Plaintiffs' breaches of the operative agreements, Plaintiffs brought this action in a last ditch effort to cast blame on the City and its employees and officials Defendants Alfonso Noyola, Elizabeth Alcantar, Martin Fuentes, Cynthia Gonzalez; Daisy Lomeli, Joshua Calhoun, Raul Diaz, Cecilia Madrigal-Gonzalez, and Louis Morales (collectively, "Individuals Defendants").  This lawsuit is meritless—Plaintiffs' federal and state claims are fatally defective and should be dismissed.

Turning to Plaintiffs' federal claims, Plaintiffs have no basis for relief of any kind.  First, the Complaint centers around Plaintiffs' cannabis businesses, and despite the legality of cannabis in California, cannabis is still illegal under federal law.  *See Gonzales v. Raich*, 545 U.S. 1, 14, 33 (2005).  Based on the federal illegality of cannabis, Plaintiffs' lack statutory standing to pursue any claim under the Racketeer Influenced and Corrupt Organization Act ("RICO").  Plaintiffs' RICO claims fail for the independent reason that the Complaint fails to allege *any* indictable predicate conduct.  Moreover, the due process claim fails for Plaintiffs' inability to identify a constitutionally protected property interest in their cannabis businesses.  Likewise, Plaintiffs' equal protection claim fails because Plaintiffs are not members of a protected class and cannot allege facts to establish a class of one.

Plaintiffs' state law claims, like their federal claims, are meritless.  The primary allegation in the Complaint hinges on the specious claim that the

contractually required non-operating fees are "illegal" and violate the DAs.  But this claim is doomed by the express language of the DA calling for the payment of fees while Plaintiffs are not operating.  Furthermore, the Complaint fails to identify any facts requiring the City to waive such fees on account of the COVID-19 pandemic. Additionally, in a futile effort to allege a breach of contract claim, Plaintiffs attempt to cobble together unrelated contract provisions to mischaracterize the agreement and to invent duties and obligations where none exist.

Plaintiffs' remaining state law claims for violation of California Government Code section 66020, declaratory relief, declaratory judgment, and wrongful use of administrative proceedings are similarly specious and do not set forth grounds for relief of any kind.

Accordingly, Defendants request that the Court should dismiss each and every count in the Complaint for failure to state a claim for which relief can be granted.

## II.    STATEMENT OF FACTS

On April 30, 2018, the City's planning commission held a public hearing concerning Plaintiffs' interest to conduct business in the City of Cudahy.  (Compl., "ECF No. 1",  ¶¶ 28, 29.)  On May 15, 2018, the City adopted Ordinances Nos. 676 through 682, approving the six developments agreements (collectively, the "DAs") at issue in this action.  (*Id.*, ¶ 29.)  Plaintiffs are six companies who are in the business of cultivating, manufacturing, and distributing cannabis.  (*Id.*, ¶¶ 15, 28.) On June 5, 2018, the City executed six identical DAs with Plaintiffs[2]—one of which is attached as Exhibit 1 to the Complaint—and are the basis of the claims alleged in

_____

[2] One of the six DAs is attached to the Complaint as Exhibit 1 and the Court is permitted to consider any documents attached to the complaint or on which the complaint necessarily relies.  *See In re NVIDIA Corp. Sec. Litig.,* 768 F.3d 1046, 1051 (9th Cir. 2014); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  As the contents of the DAs are the basis of Plaintiffs' breach of contract claim, the contents DAs are discussed in detail below in Section IV.D.

1    the complaint.  (*Id*., ¶ 30.)

2          At issue here, are the non-operating fees, mischaracterized by Plaintiffs as

3    "illegal fees."  However, Plaintiffs expressly agreed, as set forth in § 7(c) of the

4    DAs, "to pay to City…the greater of the following monthly fees (1) or (2): (1) a

5    monthly operating fee of [.42 x total square foot of the "premises"] ***until*** ***Owner is***

6    ***operating*** on the Premises, and selling product…Once Owner is operational and

7    generating revenue, the monthly operating fee is [.42 x total square foot of

8    "Production Space" or 2) a monthly operating fee… " consisting of a percentage of

9    the operator's gross receipts for various activities under the permit.  (Compl., Ex. 1,

10   "ECF No. 1-1" at 18-19) (emphasis added).

11         On March 19, 2020, due to the COVID-19 pandemic, Governor Newsom

12   issued Executive Order N-33-20 ordering individuals in California to stay home

13   except to maintain the operations of federal critical infrastructure sectors and sectors

14   designated by the State of Public Health Officer.  (ECF No. 1, ¶ 43; RJN, ¶ 1;

15   Lowder Decl., Ex. A, § 1.)  To supplement that Order, the State Public Health

16   Officer issued a list of "Essential Critical Infrastructure Workers" exempt from the

17   restriction.  (RJN, ¶ 2; Lowder Decl., Ex. B.)  The list of exempt essential work in

18   the commercial sector included "Construction Workers who support the

19   construction, operation, inspection and maintenance of construction sites and

20   construction projects (including housing, commercial, and mixed-use construction),"

21   as well as services necessary to maintain "the essential operation of construction

22   sites and projects."  (*Id*., § 13(1), (2).)

23         On March 21, 2020, the County of Los Angeles Public Health Officer issued

24   the "Safer at Home Order for Control of COVID-19" ordering individuals to remain

25   in their homes except for "Essential Businesses," and among other things, "to

26   engage in Essential Activities."  (RJN, ¶ 3; Lowder Decl., Ex. C, §§ 1, 13(t).)  The

27   definition of "Essential Businesses" included the "permitting, inspecting,

28   construction, transfer and recording of ownership of housing, including residential

1    and commercial real estate and anything incidental thereto" and also exempted

2    "construction, operation, inspection, and maintenance of construction sites and

3    construction projections." (*Id.*, § 13(t), (x).) On March 23, 2020, the City of

4    Cudahy adopted Resolution No. 20-06 declaring a local emergency due to COVID-

5    19. (*Id.*, ¶ 43; RJN, ¶ 4; Lowder Decl., Ex. D.) During the period of the COVID-19

6    closures, the City charged Plaintiffs the non-operating fees. (*Id.*, ¶ 44.) All except

7    one Plaintiff, refused to pay the non-operating fees and they were placed on default

8    status. (*Id.*, ¶¶ 2, 55, 56.)

9        On April 8, 2022, building inspector Louis Morales ("Morales") texted

10    Noyola informing him that California Department of Cannabis Control ("CA

11    Cannabis Dept") requested the status of Plaintiff Cuper Development ("Cuper"), and

12    that "Cuper owe[d] the City around $600,000. I think we can get them to the table

13    now." (*Id.*, ¶ 60.)

14        From April 18, 2022, to February 12, 2024, written communications were

15    exchanged between the City and the Plaintiffs concerning Plaintiffs' outstanding

16    balance. (*Id.*, ¶ 153; Compl., Ex. 4, ECF No 1-4 at 2-206.) On April 18, 2022,

17    Plaintiffs sent a letter to City Manager Alfonso Noyola ("Noyola") acknowledging

18    their obligations under the DAs and claiming difficulties with the approval process

19    and the COVID-19 pandemic. (*Id.*, ¶ 52; Compl., Ex. 4, "ECF No. 1-4" at 2-4.) On

20    May 2, 2022, Noyola responded to Cuper Development, LLC's and to Go Cudahy,

21    LLC's request for a payment arrangement on past due fees ("May 2, 2022 Letter

22    Agreement") by, among other things: acknowledging their difficulties; informing

23    them of their default status due to the substantial past due amount despite the notices

24    and opportunities to cure; offering the City's "willing[ness] to enter into a one-time

25    forbearance agreement" including a "proposed payment plan for the past due fees"

26    to reach a resolution; and informing them that "while in 'default status,' the City

27    [would] only issue a temporary certificate of occupancy (a "TCO") for the Site valid

28    for 90 days" which may be renewed upon Plaintiffs' compliance. (Compl, Ex. 4,

ECF No. 1-4 at 5-9 and 11-16, *see* ECF No. 1, ¶¶ 53, 67, 70; ¶ 153(3).)  On October 18, 2022, Noyola sent another Revised Letter Agreement to Go Cudahy, LLC's regarding past due amounts.  (*Id*., ¶ 71; ECF No. 1-4 at 23-28.)

In response to the ongoing dispute over the fees, on September 6, 2023, Noyola sent a text message offering the City's proposal for an immediate payment of $200,000, a Certificate of Bank Deposit to be cleared by 9/8, with the remainder of the balance to be paid over a 12 month period; new recurring payments to be timely paid, with any failure to timely submit payments within 10 days constituting default; and, upon notice of default, the operator to be sent straight to a revocation hearing (hereinafter "Noyola's $200k Proposal Text").  (*Id*., ¶¶ 76, 153.)

On October 17, 2023, after Plaintiffs rejected the City's numerous attempts to reach a resolution, Plaintiffs requested a hearing before the City Council.  (*Id*., ¶ 79.) On October 24, 2023, following the City's repeated correspondence seeking to resolve the fee issue, City Attorney Paloma Perez-McEvoy advised Plaintiffs that the City  "decided not to negotiate the repayment of fees and to continue with the administrative process" and "encourage[d] [Plaintiffs] to submit any arguments and supporting documents evidencing compliance ten (10) days in advance of the Review Hearing."  (*Id*., ECF No. 1-4 at 145-46.)  On November 15, 2023, in response to a Public Records Request, the City informed Plaintiffs that they owed a total of $5,404,282 for non-operating fees.  (*Id*., ¶ 56.)

On January 5, 2024, Plaintiffs sent a letter ("Plaintiffs' Notice to Cure Default") stating, among other things: a request for the City to cure its purported default or face a lawsuit; Plaintiffs' protest of the non-operating fees, the fees for delays by the City for the construction and redesigning approval delays, and the protest of all fees during the COVID-19 closure; and their notice to proceed under protest by posting a bond.  (*Id*., ¶¶ 113, 122, 8, 79, 176-77; Compl., Ex. 2, "ECF No. 1-2" at 3- 4.)

## III.    LEGAL STANDARD

To survive this motion to dismiss, Plaintiffs' Complaint must contain sufficient factual allegations, that if accepted as true, state a claim for relief that is plausible on its face and rises "above the speculative level." *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Moreover, Plaintiffs must satisfy the "particularity requirements" of Rule 9(b) when alleging fraudulent conduct in support of a RICO claim.  *Moore v. Kayport Package Exp., Inc*., 885 F.2d 531, 541 (9th Cir.1989).  The pleading must set forth "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Leave to amend can and should be denied when the court "determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Thus, "[dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc*., 518 F. 3d 1042, 1051 (9th Cir. 2008).

Here, Plaintiffs do not, and cannot, meet the pleading standard under Rule 12(b)(6) or the heightened pleading requirement for their RICO claims under Rule 9(b).  The Court should, therefore, dismiss the Complaint without leave to amend.

## IV.    ARGUMENT

### A.    Counts 2 and 3 are Fatally Defective and Cannot be Cured

#### 1.    Plaintiffs Lack Statutory Standing Under RICO

Plaintiffs lack statutory standing under RICO because they cannot obtain relief from claims arising from activities that are "clearly illegal under federal law."

*Shulman v. Kaplan,* 58 F.4th 404, 407, 411 (9th Cir. 2023). Despite the legality of cannabis in California, cultivating, manufacturing, and distributing cannabis is still illegal under federal law. *Gonzales*, 545 U.S. at 14. RICO's standing provision set forth in 18 U.S.C. § 1964 permits "[a]ny person injured in his business or property by reason of a violation of section 1962" to bring a claim under RICO. *Schulman,* 58 F.4th at 409. "Business or property" under RICO, however, does not include cannabis-related commerce because cannabis is still an illegal Schedule I drug under the federal Controlled Substances Act, 21 U.S.C. § 801 et seq. ("CSA"). *Id.* at 411 ("Looking to RICO as a whole, it is clear that Congress did not intend 'business or property' to cover cannabis-related commerce.").

In *Schulman*, the Ninth Circuit addressed the very question at issue here, whether a cannabis business in California has statutory standing under RICO and concluded it did not. *Id.* at 409-12. *Schulman* explained that "cultivating cannabis for sale constitutes racketeering activity under RICO, even if it is legal under state law"; and "[b]ecause RICO's definition of racketeering activity necessarily encompasses dealing in cannabis, it would be inconsistent to allow a business that is actively engaged in cultivation of and commerce in cannabis to recover damages under RICO for injury to that business." *Id.* at 411.

Identical to the issue in *Schulman*, Plaintiffs here are in the business of cultivating, manufacturing, and distributing cannabis and seek relief on RICO claims for the injury "in their business or property within the meaning of 18 U.S.C. § 1964(c)." (ECF No. 1, ¶¶ 28, 166-168, 194, 200.) As the Ninth Circuit has laid out, Plaintiffs here cannot seek relief under RICO because they lack statutory standing, and both RICO claims should be dismissed without leave to amend as any amendment would be futile. *See Kendall*, 518 F. 3d at 1051.

2. <u>The Complaint Fails to Allege the Fundamental Basis for a RICO Claim – Predicate Racketeering Activity</u>

Independent from the incurable standing defect, the Complaint fails to state a

claim for violation of Section 1962(c).  "To state a claim under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Walter v. Drayson,* 538 F.3d 1244, 1247 (9th Cir. 2008) (citation omitted).  RICO was "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3 897 (9th Cir. 2005).

To demonstrate "conduct" under § 1962(c), the plaintiff must show that each defendant "participate[d] directly or indirectly, in the conduct of such enterprise's affairs" and directed its affairs.  *Reves v. Ernst & Young*, 507 U.S. 170, 178 (1993); *Walter v. Drayson*, 538 F.3d 1244, 1248 (9th Cir. 2008).  "'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal statutes," including, in pertinent part,18 U.S.C. § 1951 for extortion, § 1341 for mail fraud, and § 1343 for wire fraud.  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1399 (9th Cir. 1986).

The Complaint fails in its attempts to allege predicate acts under 18 USC §§ 1341, 1343, and 1951.  (ECF No. 1, ¶¶ 52-86.)  Extortion under section 1951(b)(2) "means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).  Extortion, requires "'an obtaining': someone—either the extortioner or a third person—must receive the property of which the victim is deprived."  *United States v. Panaro*, 266 F.3d 939, 943 (9th Cir. 2001); *Scheidler v. Nat'l Org. for Women, Inc*., 537 U.S. 393, 404 (2003) (clarifying the "requirement that a person must 'obtain' property from another party to commit extortion).

Wire and mail fraud consist of the same elements, except the differing methods used to conduct the fraud: "(1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of

1    the scheme; and (3) specific intent to deceive or defraud." *Id.* at 1400.  Mail or wire

2    fraud must be pled with particularity under Rule 9(b). *Id.* at 1400-01.

3         The only claims alleged against the Individual Defendants are the RICO

4    claims.  Yet, Noyola and Morales, the City Manager and the building inspector,

5    respectively, are the only two Individual Defendants with any conduct identified as

6    part of the alleged scheme.  However, none of the alleged conduct describes any

7    indictable activity that could qualify as a RICO predicate offense.  In describing

8    their conduct, the Complaint simply uses conclusory labels such as "illegal,"

9    "extortion," "demand," and "threatening" in a futile attempt to paint a criminal

10   picture.  The Complaint's conclusory labels are readily disposed of and cannot form

11   the basis for liability.

12        For instance, the "various tactics used to extort payment" spread throughout

13   the Complaint refer to communications addressing issues arising from the DAs—

14   Plaintiffs' default status, Plaintiffs need for a certificate of occupancy to open, and

15   the issuance and renewal of temporary certificates of occupancy.  (*See generally*

16   ECF No. 1-4; ECF No. 1, ¶¶ 65, 67, 68, 70, 71, 73, 78, 80.)  However, these

17   communications are in no way criminal, as explained below under the breach of

18   contract analysis, IV.D.1, Plaintiffs were required to pay the non-operating fees

19   pursuant to an agreed-upon provision in the DA.  Further, Plaintiffs'

20   acknowledgement that they failed to pay fees destroys the claims of extortion here

21   because it precludes the "obtaining" necessary to state a claim for extortion. *See*

22   *Scheidler*, 537 U.S. at 404 (clarifying "the requirement that property must be

23   obtained to constitute extortion").  Moreover, these claims cannot qualify as

24   extortion under § 1951(b)(2) because they do not consist of an "inducement" or "use

25   of actual or threatened force, violence, or fear, or under color of official right."

26        The Complaint attempts to mischaracterize Noyola's attempts to enforce the

27   City's right to collect unpaid fees as extortion are likewise unavailing.  Here,

28   Plaintiffs illogically conclude that Noyola's May 2, 2020, Letter Agreement was a

"tactic to extort payment of illegal fees" and threaten them with a default status. (ECF No. 1, ¶¶ 52-55.)  Indeed, Plaintiffs were informed of their default status based on their failure to pay the past due fees, but Noyola did not use threats, violence or use fear, as demonstrated by the May 2, 2020, Letter Agreement itself. (*See* ECF No. 1-4 at 5-10.)  Likewise, the language of Noyola's $200k Proposal Text sent on September 6, 2023 was not a threat, as the text simply reiterated the ongoing discussions regarding the City's efforts towards resolution leading up to September 6, 2023—to set up the terms of a feasible payment plan, which would enable Plaintiffs to pay off the outstanding balance of $5,404,282.  (*Id*., ¶¶ 56, 76, 92; see *id*., ¶153 (list of letters); ECF No. 1-4.)  Plaintiffs' extortion claims against Noyola fail.  Defendants did not use threats of violence or fear.

As to defendant Morales, his purported role in the scheme is limited to three allegations, but none of his alleged actions qualify as an "indictable" RICO predicate act.  (*Id*., ¶¶ 60-62, 64.)  Plaintiffs claim that Morales informed the CA Cannabis Dept. of Plaintiffs' default status, but the Complaint fails to allege any facts supporting a conclusion that Morales' communication to a third party threatened Plaintiffs.  (*Id*., ¶¶ 60, 62.)  Indeed, the Complaint admits that Morales' text to Noyola indicates that the State requested the information.  (*Id*., ¶ 62.) Morales' statement to Noyola—not to Plaintiffs—"I think we can get them to the table now" is also devoid of a threat as it is an idiomatic phrase reflecting an intent to engage in a negotiation consistent with the City's numerous prior communications attempting to negotiate and work towards a resolution concerning the overdue fees.  (*Id*., ¶ 60, 76, 153; *see* ECF No. 1-4.)  Plaintiffs' claim that Morales' statement "City's position for payment for Cuper Dev. and their provision license issue" was "to leverage fear" and "to secure illegal fees" is nonsense, (*id*., ¶ 62, 64), as none of the challenged statements were directed to Plaintiffs.

Moreover, the conduct of the remaining Individual Defendants is not described at all in the Complaint.  Those individuals—Alcantar, Fuentes, Gonzalez,

Lomeli, Calhoun, Diaz, and Madrigal-Gonzalez—are merely lumped together as the "Defendants." (*Id*., ¶ 26.) Without specifying what falls under fraud, the names of the Individual Defendants are referenced in the list[3] of "invoices, letters and emails" as forms of "extortion, mail and wire fraud." (*Id*., ¶ 153.) The Complaint, however, makes no effort to justify or explain how the identified correspondence is evidence of criminal conduct. The absence of any factual allegations to support the "illegal" label is unsurprising. The Complaint's allegations against the Individual Defendants wholly fail to show any activity that could be considered a RICO predicate act, which is the basic element of a RICO claim. Furthermore, Plaintiffs' claims fall far below Rule 9(b)'s particularity requirement.

Accordingly, the facts alleged in the Complaint fail to allege a RICO claim. Moreover, amendment cannot cure the fatal defects of this pleading, therefore, the Court should dismiss this claim without leave to amend. *See Kendall*, 518 F. 3d at 1051.

### 3.    The Complaint Fails to State a Claim for RICO Conspiracy

As relevant here, 18 U.S.C. § 1962(d) makes it unlawful to conspire to violate § 1962(c). As the Complaint fails to adequately plead a substantive violation of RICO under § 1962(c), the RICO conspiracy claim also fails and it should be dismissed without leave to amend. *See* 18 U.S.C. § 1962(d); *Howard v. Am. Online Inc*., 208 F.3d 741, 751 (9th Cir. 2000).

/ / /

/ / /

---

[3] On a separate note, in an attempt to enhance this list of "mail and wire fraud," Plaintiffs have included Philip Kfoury of Plaintiff Cuper Holdings' letters to the City (ECF No. 1, ¶ 153 (1), (2), (5)-(7), and their own attorney Daffodil Tyminsky's communications to the City as claims of mail and wire fraud by the Individual Defendant. (*Id*., ¶ 153 (21), (24), (26).) This simply cannot support their claims of mail and wire fraud by the Individual Defendants.

1
2

      **B.    Count 4 Fails to Allege a Violation of Equal Protection under 42 U.S.C. § 1983**

3
4
5
6
7
8
9
10
11
12
13
14
15
16

      The Complaint fails to make the factual showing necessary to plead a viable equal protection claim.  "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment[,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  Alternatively, "equal protection claims [can be] brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The Supreme Court has "repeatedly held that a classification neither involving fundamental rights nor proceeding along suspect lines ... cannot run afoul of the Equal Protection Clause if there is a rational relationship between disparity of treatment and some legitimate governmental purpose." *Cent. State Univ. v. Am. Ass'n of Univ. Professors*, 526 U.S. 124, 127-28 (1999) (citations omitted).

17
18
19
20
21
22
23
24
25
26
27

      Here, Plaintiffs do not allege any facts that support an equal protection violation nor can they based on the facts alleged in the Complaint.  Plaintiffs do not allege that they are members of a protected class, nor do they allege disparate treatment from others similarly situated for a class-of-one claim.  Significantly, the Supreme Court has not classified business owners or businesses to be part of a suspect class protected by the Equal Protection Clause of the Fourteenth Amendment.  *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 61 (1973) (describing race, national origin, alienage, indigency, or illegitimacy as suspect class); *Williamson v. Lee Optical*, 348 U.S. 483, 489 (1995) (applying rational basis to business regulations).  As it is not feasible to allege an equal protection claim based on these facts, this claim should be dismissed without leave to amend.

28
/ / /

1
2

## C.    Count 5 Fails to Allege the Threshold Requirement for a Due Process Claim

3       Count 5 fails to specify whether Plaintiffs' due process claims allege a
4  violation of their substantive or procedural due process rights.  Nevertheless, the
5  Complaint falls short of meeting either standard because Plaintiffs fail to allege a
6  violation of a constitutionally protected liberty or property interest—a threshold
7  requirement for a viable due process claim.

8       The Fourteenth Amendment protects individuals against the deprivation of
9  liberty or property by the government without due process.  *Portman v. County of*
10 *Santa Clara*, 995 F.2d 898, 904 (9th Cir.1993).  "A threshold requirement to a
11 substantive or procedural due process claim is the plaintiff's showing of a liberty or
12 property interest protected by the Constitution."  *Wedges/Ledges of California, Inc.*
13 *v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994) (citing *Board of Regents v.*
14 *Roth*, 408 U.S. 564, 569 (1972)).  Cultivation, manufacturing, and distribution of
15 cannabis are illegal under federal law, and thus, there is no federal constitutional
16 right to engage in them.  *Gonzales,* 454 U.S. at 8; *see Raich v. Gonzales*, 500 F.3d
17 850, 865-66 (9th Cir. 2007) (finding no "fundamental" right to use medical
18 marijuana under the fourteenth amendment due to its classification as a Schedule I
19 drug under the CSA); *Grandpa Bud, LLC v. Chelan Cnty. Washington*, No. 2:19-
20 CV-51-RMP, 2020 WL 2736984, at *4 (E.D. Wash. May 26, 2020) ("Despite state
21 legalization, there is no federal constitutional right to cultivate cannabis.").

22      In fact, the CSA expressly states that "substances which have been
23 manufactured, distributed, dispensed, or acquired in violation of [the CSA], shall be
24 subject to forfeiture to the United States and *no property right shall exist in them*."
25 21 U.S.C. § 881(a)(1) (emphasis added); *Shulman*, 58 F.4th at 411.  Accordingly,
26 because Plaintiffs are in the business of cultivating, manufacturing, or distributing
27 cannabis, Plaintiffs fail to satisfy the threshold requirement of showing a
28 constitutionally protected property interest; therefore, the due process claim under

1    Section 1983 should be dismissed without leave to amend.  *See also Yale Auto*

2    *Parts, Inc. v. Johnson*, 758 F.2d 54, 58 (2d Cir. 1985) ("Section 1983. . .does not

3    guarantee a person the right to bring a federal suit for denial of due process in every

4    proceeding in which he is denied a license or a permit.").

5         **D.    Count 1 Fails to Allege Facts Showing the City's Breach**

6         Plaintiffs' complaint fails to allege facts to support a viable claim for breach

7    of contract.  "To prevail on a [claim] for breach of contract, the plaintiff must prove

8    (1) the contract, (2) the plaintiff's performance of the contract or excuse for

9    nonperformance, (3) the defendant's breach, and (4) the resulting damage."

10   *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014).  "The language of a

11   contract must control its interpretation when its diction is clear, reasonable and

12   explicit and is in harmony with the general purpose of the agreement."  *Sass v.*

13   *Hank*, 108 Cal. App. 2d 207, 215 (1951); Cal. Civ. Code § 1638.  A contract must

14   be construed as a whole, with each clause giving effect and helping to interpret the

15   other.  Cal. Civ. Code § 1641.

16        Here, Plaintiffs fail to adequately allege that they performed their obligations

17   under the contract or that any such required performance was excused.  Further, in

18   apparent conflict with their allegation that the DAs do not provide for imposition of

19   nonoperating fees, Plaintiffs claim that any fees owed while they were not operating

20   should have been waived due to COVID-19.  Plaintiffs' claim, however, is in

21   conflict with the plain language of the DAs and in direct conflict with judicially

22   noticeable facts.

23              1.    The DAs Expressly Provided for Non-Operating Fees

24        The lynchpin of Plaintiffs misguided lawsuit is the mischaracterization of the

25   bargained for non-operating fees as "illegal."  From this distorted view of an

26   obligation Plaintiffs knowingly and willingly accepted, the Complaint attempts to

27   manufacture liability where none exists.  (ECF No. 1, ¶¶ 1, 47-57, 92-95).  The

28   primary justification for Plaintiffs' claim appears to be that the exact term "non-

operating fees" does not appear in the DAs.  (*Id.*, ¶¶ 93, 95).  Plaintiffs' argument on this point is specious.  Section 7(c) of the DAs contains various calculations for fees owed to the City that are expressly based on the status of Plaintiffs' operations. (ECF No. 1-1 at 18-19.)  It states, "Owner agrees to pay to City…the greater of the following monthly fees (1) or (2): (1) a monthly operating fee of [.42 x total square foot of the "premises"] ***until Owner is operating*** on the Premises, and selling product… Once Owner is operational and generating revenue, the monthly operating fee is [.42 x total square foot of "Production Space"] ... or 2) a monthly operating fee…" (*Id.*) (emphasis added).  While the word "non-operating" is not expressly stated, the term "*until* Owner is operating" unambiguously refers to fees prior to a time "Owner is operating" on the premises.  Plaintiffs' proffered construction of the agreement would read the term "until" out of that sentence and render an entire clause superfluous.

Indeed, a further examination of section 7(c) exposes the absurdity of Plaintiffs central claim in this case.  After identifying the fees that apply "until Owner is operating on the Premises," the DAs go on to identify the calculations that apply "[o]nce Owner is operational and generating revenue . . ." (ECF No. 1-1 at 18.)  The temporal distinction between the two causes is obvious.  "[U]ntil Owner is operating" unmistakenly refers to a period of time *before* the Owner is operating and "[o]nce Owner is operational and generating revenue" plainly refers to the time *after* the Owner is operating.  Simply put, there is no cogent reading of the DAs that supports an argument that it does not contemplate the imposition of certain fees when the Owner is not operating.

Because the entire complaint is based on this patently baseless construction of the contract, Plaintiffs have no basis to recover relief of any kind from Defendants.

        2.   <u>Plaintiffs Had No Right to a Waiver of Non-Operating Fees</u>

        a.   <u>The Force Majeure Clause Does Not Apply</u>

Plaintiffs claim that the Force Majeure clause in the DAs entitled them to a

waiver of the non-operating fees fails for three independent reasons. Each of their arguments fails to support Plaintiffs claim for breach of contract.

First, the COVID-19 pandemic did not invoke the Force Majeure clause in the DA. The DAs define "Force Majeure" as "war, insurrection, acts of God, local, state or national emergencies, strikes and other labor difficulties beyond the party's control, or any default by the City, which *Force Majeure event substantially interferes with the development, construction, or operation* of the Project." (ECF No. 1-1 at 40) (emphasis added). Here, the Complaint fails to show how COVID-19, or the government closure orders "substantially interfered" with the Project's "development, construction, or operation," to invoke the Force Majeure clause. (*See* ECF No. 1, ¶ 43-44.)

Governor Newsom's closure order, LA County's closure order (collectively, "government orders"), and the City's Resolution No. 20-06 did not shut down Plaintiffs' development of the premises. (*See* ECF No. 1, ¶¶ 43, 44.) Contrary to Plaintiffs' claims, the government orders exempted "construction, the operation, inspection, and maintenance of construction sites" from the stay-at-home orders, expressly allowing these activities to continue. (RJN, ¶¶ 1-4; Lowder Decl., Exs. A, B, C, D.) These orders also included in their definitions of "Essential Businesses," the "permitting, inspecting, construction, transfer and recording of ownership of housing, including residential and commercial real estate and anything incidental thereto." As such, the government's orders expressly allowed the development and construction of Plaintiffs' project. Significantly, the City's Resolution No. 20-06 does not contain any language shutting down businesses at all. (RJN, ¶ 4, Lowder Decl., Ex. D.) The only closures are in the recitals where it states the "cancellation of all events taking place at city run centers" and "all senior citizen activities and community events." (*Id.*) Thus, the plain language of the relevant orders did not prevent or substantially interfere with Plaintiffs' ability to continue developing their sites.

Next, courts interpreting Force Majeure clauses related to the COVID-19 pandemic have rejected the claim that government closure orders excuse performance obligations unless those obligations were directly affected by the orders.  In *KB Salt Lake III, LLC v. Fitness Int'l, LLC*, 95 Cal. App. 5th 1032, 1047-55 (2023), the court rejected the plaintiff's argument that COVID-19 related events triggered the force majeure clause.  There, the court held that the government's closure orders did not prevent the plaintiff from renovating the premises or paying rent because the plain language of the government's closure orders "excluded commercial [and retail] constructions, such as the renovation of the premises, from businesses that had to cease operations," *id*. at 1048, and "the COVID-19 pandemic did not delay, hinder, or prevent [plaintiff] from the act of paying rent." *Id*. at 1050; *see SVAP III Poway Crossings, LLC v. Fitness Int'l, LLC,* 87 Cal. App. 5th 882, 892-93 (2023) (holding that the force majeure provision does not apply because the government's COVID-19 closure orders did not hinder plaintiffs' ability to pay rent).  Likewise, here, the government's closure orders did not trigger the Force Majeure clause—the orders did not affect Plaintiffs' ability to develop or construct the premises nor did they impact Plaintiffs' ability to pay the non-operating fees.

Moreover, the plain language of the Force Majeure clause in Section 23(i) does not entitle Plaintiffs to a waiver of fees.  The force majeure clause explicitly allows for an "extension of time" due to unforeseen events or City defaults, but notably, it does not address, let alone compel, the waiver of fees.[4]  (*Id*. at 40.)

---

[4] But even if the force majeure clause was triggered to permit "an extension of time" to pay the fees, the Complaint demonstrates that Plaintiffs were provided ample time to come into compliance before any revocations.  Indeed, Defendants' efforts to work with Plaintiffs before taking any action are demonstrated by the extensive list of communications in the Complaint from Defendants to Plaintiffs regarding the overdue fees, which span a period of approximately two years. (ECF No. 1, ¶ 153; Ex. 4, ECF No 1-4.)

b.     The City Was Not in Default and Thus Did Not Breach

Plaintiffs repeatedly mischaracterize the terms of the DAs to manufacture an alleged default by the City to claim a right to waiver of the non-operating fees.  (*See* ECF No. 1, ¶¶ 32, 38, 45-46.)  According to the plain terms of the DA, the City was not in default.  Plaintiffs allege default due to the City exercising its right to request revisions of the site and floor plans for the facility, on the basis that such revisions breach sections 1, 3, and 13 of the DA.  (*Id*., ¶ 36-38, 46.)  Section 1 outlines the "government code and municipal code required elements."  (ECF No. 1-1 at 7-8.)  Section 3 sets out Plaintiffs site and floor plans and expressly mandates that "[a] preliminary landscape plan shall be prepared and reviewed and approved by the *City Manager and/or Community Development* Manager" and a final landscape plan shall be submitted prior to the issuance of building permits.  Section 13 requires Plaintiffs to comply with the "terms and conditions of City's Standard Conditions for Construction."  The language of the DAs expressly permits the City's review and approval of the plans for compliance—a right that necessarily includes the ability to request revisions from the Owners.  The City was, therefore, not in default.

c.     The City Was Not Required to Hold Annual Hearings

By the express terms of the DAs, Plaintiffs cannot pursue a claim for breach based on the City's alleged decision not to hold annual review hearings under § 19(a).  (*See* ECF No. 1, ¶ 96-107*; ECF No. 1-1 at 35.)  Section 19 provides that there will be an annual review and "the Planning Department will schedule a hearing on the periodic review of the [DA]."  Section 19(f) further states "City's failure to conduct a periodic review of this Agreement **shall not constitute a breach of this Agreement.**" (ECF No. 1-1 at 36) (emphasis added).  Moreover, the DAs did not prevent Plaintiffs from raising issues or concerns outside of the annual review process.  Section 19 expressly provides that "[Plaintiffs] shall *document* any request for an extension of the term due to delays beyond the control of Owner (see Section 23(i), "Force Majeure").  (*Id*.) (emphasis added).  Here, the numerous

1   communications between the parties foreclose any argument that Plaintiffs did not

2   have an opportunity to raise their concerns with the City.  (*See* ECF No. 1, ¶¶ 60-71,

3   73, 76, 153; *see* ECF No. 1-4.)

4               d.      Recitals of a Contract Do Not Form Rights and

5                       Obligations

6   Plaintiffs' numerous conclusions based on "Recitals" in the DAs cannot be a

7   basis for breach of contract.  Specifically, the Complaint's allegations that the City

8   breached because it failed to expedite Plaintiffs' permits when they were "promised

9   priority processing" are not based on the City's promises to Plaintiffs.  (*See* ECF

10  No. 1, ¶¶ 33-35, 39, 40, 41, 46, 48, 89.)  California law is clear that a promise is

11  "never implied from a mere recital" and is not legally binding on its own.

12  *O'Sullivan v. Griffith*, 153 Cal. 502, 506 (1908).  Thus, Plaintiffs cannot rely on

13  these mere recitals to plead a claim for breach of contract.

14  No viable breach of contract claim can possibly be raised on these facts;

15  therefore, this claim should be dismissed without leave to amend.  *See Kendall,* 518

16  F.3d at 1051 (9th Cir. 2008).

17  **E.      Counts 6 and 8 Fail to State a Claim**

18  Plaintiffs' sixth and eighth claims fail because the non-operating fees do not

19  violate any law or the DAs.  First, Government Code section 66020 does not apply

20  here.  Section 66020 is part of a larger framework of rules governing development

21  impact fees under the Mitigation Fee Act (Gov't Code, § 66000 et seq.) ("The Act").

22  The Act authorizes local agencies to impose fees on development projects to cover

23  the costs of public infrastructure and services for those developments.  *See generally*

24  Cal. Gov't Code §§ 66000-66025; *Walker v. City of San Clemente*, 239 Cal. App.

25  4th 1350, 1356 (2015).  Under the Act, local agencies must specify the use of the fee

26  imposed and its relationship to the new development, ensuring the fees comply with

27  specific requirements to prevent it from being used for general revenue purposes.

28  *See Walker,* 239 Cal. App. 4th at 1356.  Critically here, however, fees imposed

under a development agreement are exempted from the fees subject to the Act.

Section 66000(b) defines the "fees" subject to the Act as a "monetary exaction…charged by a local agency to the applicant in connection with approval of a development project… ***but does not include***…fees collected under development agreements adopted pursuant to Article 2.5 (commencing with Section 65864)." (emphasis added).  Here, the DAs were adopted pursuant to Article 2.5, under Cal. Govt. Code sections 65864 et seq., (ECF No. 1-1 at 2), and therefore, expressly excluded from the category of fees covered by § 66020.  Likewise, City Municipal Code ("CMC") § 15.40.020, subsection 13, expressly excludes "fees collected under development agreements" from the category of fees under § 15.40, thus, it is inapplicable.  Because fees pursuant to development agreements are expressly exempt from these regulations, both claims should be dismissed without leave to amend.

## F.    Count 7 Fails as the Operating Fees are not an Illegal Tax

Simply put, the Complaint fails to allege facts sufficient to support a claim for declaratory relief.  Specifically, the Complaint fails to allege facts to support its characterization of the contractually agreed upon operating and non-operating fees as an *illegal* tax.  The Complaint, in paragraph 216, alleges that, pursuant to a 2023 resolution, the operating and non-operating fees are a tax.  As a threshold matter, the language quoted in paragraph 215 does not mention the DAs, operating fees, or non-operating fees.  (Compl., ECF No. 1, ¶216.)  Furthermore, the Complaint makes no effort to explain how a 2023 City resolution that does not mention the DAs, or any type of operating fees can retroactively convert the contractually agreed upon payments into taxes.  Instead, the Complaint merely recites isolated provisions from the City's Resolution No. 23-41, provisions from the City's Municipal Code, and general sections from the Government Code.  (Compl., ECF No. 1, ¶216.)  On their face, the City's enactments do not purport to address the fees required by the DAs, likewise, Government sections 53722 and 53723 do not identify operating fees or

1  non-operating fees as an illegal tax.

2      Accordingly, the Complaint fails to allege facts entitling Plaintiffs to a

3  declaratory judgment that the operating and non-operating fees are an illegal tax.

4      **G.    Plaintiffs Cannot Prevail on Count 9 Due to Their Failure to**

5          **Exhaust Administrative Remedies**

6      Plaintiffs must appeal their claim pursuant to City of Cudahy Municipal Code

7  § 5.020.080(7).  "[A] party aggrieved by an administrative decision must exhaust

8  any available, nonduplicative administrative review procedures before challenging

9  the decision in court."  *City of Fillmore v. Bd. of Equalization*, 194 Cal. App. 4th

10 716, 725, 125 Cal. Rptr. 3d 186, 192 (2011).  Here, City of Cudahy Municipal Code

11 § 5.020.080(7) provides an administrative remedy to appeal decisions regarding

12 cannabis permits.  Plaintiffs must, therefore, challenge the City's administrative

13 proceeding to revoke a permit or the DAs by appealing it with the City as set forth

14 in § 5.020.080(7).  Accordingly, the Court should dismiss this claim.

15 **V.    CONCLUSION**

16     For the foregoing reasons, Defendants respectfully request that the

17  Complaint be dismissed in its entirety under Rule 12(b)(6) for failure to state a

18  claim upon which relief can be granted.

19 Dated:  June 6, 2024              LARSON LLP

20

21

22                      By:    */s/ A. Alexander Lowder*

23                            Stephen G. Larson
                              A. Alexander Lowder

24                      Attorneys for Defendants CITY OF CUDAHY,
                        ALFONSO NOYOLA; ELIZABETH
25                      ALCANTAR; MARTIN FUENTES;
                        CYNTHIA GONZALEZ; DAISY LOMELI;
26                      JOSHUA CALHOUN; RAUL DIAZ, and
                        CECILIA MADRIGAL-GONZALEZ.
27

28